315 So.2d 31 (1975)
STATE of Louisiana
v.
Willy BELL.
No. 55800.
Supreme Court of Louisiana.
April 24, 1975.
*32 John F. Rau, Jr., Harvey, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Gordon K. Konrad, Asst. Dist. Atty., Abbott J. Reeves, Director, Research and Appeals Div., for plaintiff-appellee.
SUMMERS, Justice.
Defendant Willy Bell was charged by bill of information with the armed robbery of Cheryl Canavier at the Mark Twain Apartments in Jefferson Parish on September 8, 1973. After a trial by jury, he was found guilty as charged and sentenced to serve twenty years at hard labor without benefit of parole, probation or suspension of sentence. On this appeal he relies upon three bills of exceptions for reversal of his conviction and sentence.

Bill 1
This bill was reserved to the ruling of the trial judge denying a defense motion to *33 suppress as evidence a line-up identification of defendant conducted prior to trial.
The motion to suppress alleges that defendant was arrested on September 8, 1973 and brought to jail in the city of Kenner. While there he was exhibited to Cheryl Canavier and then, in what purported to be a line-up, he was exhibited on stage with four others and Cheryl Canavier identified him. This proceeding took place, according to the allegations, without advising defendant of his right to counsel or his having the benefit of counsel. Defendant set forth that the identification as conducted was violative of the State and Federal Constitutions, and, therefore, it should be suppressed as evidence together with all subsequent identification.
At the hearing on the motion to suppress, defendant testified that he was sitting at a desk and being questioned by the police, while the victim, Cheryl Canavier, observed him through a divider window from an adjoining room. When the questioning was concluded, defendant was placed in a line-up with four others and identified by the victim Cheryl Canavier through the window from her position in the adjoining room.
To the contrary, Officer Pellegrini, who questioned defendant, testified that Cheryl Canavier had not arrived at the jail while he was questioning Bell. When she did arrive she remained outside, as she had been instructed to do, and did not come in until the line-up was set up. Officer Donnelly also testified that he brought the victim to the jail and kept her outside until time for the line-up. And, finally, the victim testified that she did not see the defendant alone on this occasion prior to line-up, as the police made her wait outside.
On these facts the trial judge denied the motion. There is no error in his judgment. To the contrary, the evidence overwhelmingly supports the ruling.
Now, for the first time in brief, the defense asserts that the judge's ruling on this motion to suppress is a determination of fact bearing upon guilt or innocence which should only be decided by the jury. To permit the judge to decide this question, according to the defense argument, is contrary to Article XIX, ¶9, of the Louisiana Constitution of 1921 which makes clear that "The jury in all criminal cases shall be the judges of the law and of the facts on the question of guilt or innocence. . .."
The issue has not been timely urged, and it is without merit. A ruling on a defense motion to suppress evidence makes no determination bearing upon guilt or innocence. It is just the opposite. The effect is, instead of denying the jury the right to consider the evidence, to permit the evidence to be placed before the jury for whatever effect it may have upon the question of guilt or innocence. On the other hand if the motion to suppress is granted on the defendant's motion, he cannot complain that improper evidence harmful to his cause is not allowed to be put before the jury. And, of course, motions to suppress are always at the instance of the defendant. La.Code Crim.Proc. art. 703. The State has no such right.

Bills 2 and 3
During his lengthy opening statement the Assistant District Attorney said:
"At 4:41, excuse me, which is in between the time of the armed robbery and the time the stolen car report, there was a lady driving in the vicinity of Hollandy Drive and Airline Highway and a male driving a `63 Ford attempted to run her off the road. After running her off the road he came back to her vehicle and at that time he was armed with a rifle. At that time she took two shots at him and he left and he ran off and left that `63 Ford there."
*34 Shortly thereafter when the prosecution's opening statement was concluded, defense counsel moved for a mistrial relying on Article 770(2) of the Code of Criminal Procedure which makes the granting of a mistrial mandatory when the district attorney, during the trial or in argument, refers directly or indirectly to another crime committed by the defendant as to which evidence is not admissible. It is the defense contention that the facts referred to were not connected with the crime charged, and they were not part of the res gestae. The statement was made, and evidence to support it was later introduced, over defense objection, it is contended, to make the defendant out as a bad man.
Later when Mable Mixon, the victim of this incident, testified at the trial, defense counsel again moved for a mistrial on similar grounds.
In our view, the facts alluded to in the prosecutor's opening statement, later supported by the evidence, and Mrs. Mixon's testimony were inextricably linked to the events forming the transaction which constituted the crime for which defendant was charged. Thus, on September 7, 1973, at approximately 11:00 p.m. two Jefferson Parish deputies observed Bell drive up in a 1963 Ford while they were investigating a disturbance at 301 South Atlanta Street, in Kenner, Louisiana. The officers left without incident.
At 3:40 a.m. the following morning, the same police officers received a complaint by Cheryl Canavier that she had been the victim of an armed robbery, the assailant being armed with a knife. When they arrived at the scene, she gave a full description of the robber and his vehicle, a 1963 or 1964 Ford. That same morning, at 5:19 a.m. defendant Bell reported to the police that his 1963 Ford had been stolen from 301 South Atlanta Street.
As part of their investigation of this latter complaint, the officers went to the Atlanta Street address. Upon arrival, they realized that the description of her assailant given by Canavier fit Bell's physical description and that he had changed clothes in the meantime. This, together with the circumstance that the car described by the robbery victim fit the description of Bell's car, persuaded the officers to take him into custody. Later, the knife wielded in robbing Canavier was found on Bell's person.
During the interval between the armed robbery and the stolen vehicle report, and within one hour, just a few miles away, Bell, driving his 1963 Ford, tried to run Mable Mixon off the road. When her vehicle came to a stop on the roadside, Bell stopped a short distance away, got out of his car and approached her with a rifle. She was also armed, however, and fired at him before he could reach her; whereupon he fled, leaving his 1963 Ford behind. Soon thereafter, when the police investigated and inspected the abandoned Ford car, they found certain items which had been taken from Cheryl Canavier in the armed robbery that morning.
As these facts make clear, the report of the robbery, the description of the assailant and his 1963 Ford car; the investigation of the hit and run incident with the discovery of the abandoned car containing the items obtained in the robbery, and the later report of the stolen 1963 Ford, all formed links in the chain of evidence required to establish elements of the crime charged. Without a doubt, Mixon's testimony linking Bell with the supposedly "stolen" car and the items found in it after the robbery was vital. Otherwise it would have been doubtful that the evidence found in his automobile at that location could have been attributed to him once he had reported the car as having been stolen. The probative effect of this evidence objected to at the trial far outweighed its prejudicial effect.
The rules of evidence require that a defendant be convicted only upon evidence relevant to the particular crime *35 charged. For that reason evidence of his propensity to commit crimes, and nothing else, is inadmissible because it does not tend to prove that defendant committed the particular crime charged. When, however, relevant and highly probative evidence is necessary to establish the elements of the crime charged, the fact that it involves another crime does not render that evidence objectionable. State v. Graves, 301 So.2d 864 (La.1974); State v. McGuffey, 301 So.2d 582 (La.1974); State v. Kinchen, 290 So.2d 860 (La.1974); State v. Cormier, 272 So.2d 686 (La.1973); State v. McLeod, 271 So.2d 45 (La.1973).
There is no merit to these bills.

Bill 4
Shortly after the line-up identification of Bell by the robbery victim, Mable Mixon was called to identify the person who ran her off the road. She was unsure and hesitated to identify anyone. Bell was in the line-up. However, when she testified at the trial she made a positive identification of Bell, explaining that she was distraught the night the line-up was held and could not be sure.
Based upon this inconsistency, defense counsel filed a motion for a new trial alleging that her trial testimony involved perjury of a material fact. The motion was denied.
Credibility of the witness is a matter which addresses itself to the trier of fact. Rights of the defendant were preserved by the trial judge's instruction that the jury could disregard the testimony of any witness who in their opinion testified falsely.
Review of a trial judge's action on a motion for a new trial is confined to errors of law. La.Code Crim.Proc. art. 858; State v. Martin, 255 La. 961, 233 So.2d 898 (1970). No error of law is presented by this bill.
This bill lacks merit.
For the reasons assigned, the conviction and sentence are affirmed.
BARHAM, J., dissents with reasons.
DIXON and CALOGERO, JJ., concur.
BARHAM, Justice (dissenting).
The majority has found that the prosecutor's reference during opening statement to another crime allegedly committed by the defendant did not mandate granting the defendant's motion for a mistrial under La.C.Cr.P. art. 770(2). Likewise, the majority approves the trial court's denial of defendant's motion for mistrial made when the victim of the extraneous offense (for which the defendant was not then on trial) testified concerning the details of her encounter with the defendant. I disagree with the majority, believing that the prosecutor's remarks and the witness' testimony regarding another offense constitute reversible error.
According to the majority, "* * * the facts alluded to in the prosecutor's opening statement, later supported by the evidence, and Mrs. Mixon's testimony were inextricably linked to the events forming the transaction which constituted the crime for which the defendant was charged * * *." I do not believe, however, that this statement by the Court is grounded in reason. According to the facts as found by the majority, this "other crime" took place about an hour after the armed robbery and a few miles distant from the scene of the robbery. The record indicates that the defendant's home was only about two miles from the scene of the robbery. This leads me to believe that the defendant's unrelated encounter with Mrs. Mixon did not even take place in the course of an attempt to flee from the scene of the armed robbery. There is no indication in the record that the two offenses were thus related. If there are factors which may be seen as *36 "inextricably" linking this other offense with the earlier armed robbery of a different individual at a different location, the majority has failed to outline them and the record does not reveal them.
The majority avers that the investigation of the incident involving Mrs. Mixon and the later report of the stolen 1963 Ford, along with the report of the armed robbery, the robbery victim's description of her assailant and his automobile and other details "* * * formed links in the chain of evidence required to establish elements of the crime charged * * *." (Emphasis added.) It is clear to me, however, that the references to the other crime involving Mrs. Mixon did not constitute evidence required to establish that defendant had committed a theft of something of value from the person of another by use of force, while armed with a dangerous weapon. See La.R.S. 14:64. The record indicates that the victim of the armed robbery supplied the required substantive evidence of defendant's commission of the crime by her unequivocal testimony that the defendant was her assailant and that he forcibly took her purse while attacking her with a knife. The evidence also reveals that the knife was found on defendant at the time of his arrest. The defendant's own testimony does not even attempt to establish that he was not in possession of his own car at the time of the commission of the armed robbery. It therefore appears to me that the evidence of defendant's assault on Mrs. Mixon served no purpose and lacked relevance vis a vis the earlier armed robbery. Its inclusion in the State's case in chief did serve, however, to establish that the defendant was "a bad and vicious man." The majority concludes that:
"* * * Without a doubt, Mixon's testimony linking Bell with the supposedly `stolen' car and the items found in it after the robbery was vital. Otherwise it would have been doubtful that the evidence found in his automobile at that location could have been attributed to him once he had reported the car as having been stolen. * * *"
A careful review of the witness Mixon's testimony fails to disclose any fact which linked Bell with the car at the time of the assault. In fact, Mrs. Mixon's testimony indicates that her assailant was on foot and reveals that at the time of the assault she was unaware of the existence of any other car and only learned of its presence when the police arrived at the scene and pointed out a car across the railroad tracks.
In my opinion, the portions of the prosecutor's opening statement of which the defendant complains, and the testimony adduced in an attempt to support them constitute reversible error.
For all of the reasons stated above, I respectfully dissent.